**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                                  :
MARJORIE CHULSKY, ON BEHALF OF            :
HERSELF AND THOSE SIMILARLY               :          **Civil No. 10-3058 (FLW)**
SITUATED,                                        :
                                                  :
                    Plaintiffs,                   :          **OPINION**
         v.                                       :
                                                  :
HUDSON LAW OFFICES, P.C., LAURI A.        :
HUDSON a/k/a LAURI A. HUDSON, ESQ.,       :
and JOHN DOES 1 to 10,                    :
                                                  :
                    Defendants.                   :
_____     :

**WOLFSON, United States District Judge:**

Presently before the Court is Defendants Hudson Law Offices ("Hudson Law") and

Lauri A. Hudson a/k/a Lauri A. Hudson, Esq. ("Hudson") (collectively, "Defendants")

motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), this putative class

action brought by Plaintiff Marjorie Chulsky ("Plaintiff" or "Chulsky").  Plaintiff's claims

arise of out of Hudson Law's purchase of, and attempts to collect, a consumer debt.

Defendants seek to dismiss all of the claims asserted in Plaintiff's Complaint, which claims

are brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et

seq., the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, et seq., and the New

Jersey Truth in Consumer Contract, Warrant and Notice Act ("TCCWNA"), N.J.S.A. 56:12-

1

14, et seq. In addition, Defendants contend that Defendant Lauri A. Hudson cannot be held individually liable for the challenged actions and should, therefore, be dismissed from the suit.  For the reasons that follow, the Court grants Defendants' motion with respect to the NJCFA and TCCWNA claims, but denies Defendants' motion with respect to Plaintiff's FDCPA claim.

## I.      BACKGROUND

On March 26, 2010, Defendant Hudson Law filed a complaint ("Hudson Complaint") against Plaintiff in the Superior Court of New Jersey, Special Civil Part, Small Claims in Monmouth County, New Jersey, to collect on a $1,194.72 credit card debt. Compl. ¶ 24.  The Hudson Complaint states that Hudson Law "is a successor in interest to this credit card account first issued by First Bank of Delaware for a Continental Finance MasterCard ...."  Compl., Exh. A ("Hudson Compl.") at 1.  The Bill of Sale attached to the Hudson Complaint states that Hudson Law purchased the debt from Credit Solutions, Corp.  See Bill of Sale dated Mar. 30, 2008.  The Hudson Complaint was signed by Defendant Hudson as attorney for Hudson Law.  Plaintiff alleges that Hudson Law has purchased over 100 similar consumer debts and that Defendant Hudson files actions to collect on those debts.  Compl., ¶ 29.  According to Plaintiff, on May 11, 2010, the Hudson Complaint was dismissed via a Stipulation of Dismissal with Prejudice.[1]

---

[1]      The Court notes that the copy of the Stipulation of Dismissal attached to Plaintiff's Complaint is unsigned.  However, the Court need not rely upon this fact in

Plaintiff filed the instant action on May 12, 2010, challenging Defendants' filing of the Hudson Complaint under the FDCPA, NJCFA, and TCCWNA, and Defendant removed to this Court on June 16, 2010.  In connection with each claim asserted, Plaintiff alleges that Hudson Law's purchase of the debt was an *ultra vires* corporate act because professional services corporations, such as law firms, are prohibited from engaging in the purchase of consumer debts.

In support of Plaintiff's legal conclusion that Hudson Law's purchase was an *ultra vires* act, Plaintiff cites to New Jersey's Professional Services Corporation Act ("PSCA"), N.J.S.A. 14A:17-1 et seq., which limits the business and investment activities of professional service corporations.   In her complaint, Plaintiff points specifically to the following language found in the PSCA:

> No professional corporation shall engage in any business other than the rendering of the professional services for which it was specifically incorporated; and no foreign professional legal corporation shall engage in any business in this State other than the rendering of legal services of the type provided by attorneys-at-law; provided, that nothing in this act or in any other provisions of existing law applicable to corporations shall be interpreted to prohibit such corporation from investing its funds in real estate, mortgages, stocks, bonds or any other type of investments, or from owning real or personal property necessary for, or appropriate or desirable in, the fulfillment or rendering of its professional services.

N.J.S.A. 14A:17-9.  Defendant disputes Plaintiff's reliance on this statutory provision and

ruling on Defendants' motion.

moves to dismiss each of Plaintiff's claims.

## II.      STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim under 12(b)(6), a Court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff "and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court "retired" the language in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). Rather, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. The Third Circuit summarized the pleading requirement post- Twombly:

> The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element.' This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'

Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

4

In affirming that the Twombly standard applies to all motions to dismiss, the Supreme Court recently further clarified the 12(b)(6) standard. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, ---U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S.Ct. at 1950. Accordingly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. In short, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

III.   DISCUSSION

Defendants raise several challenges to each of Plaintiff's causes of action.  I address each in turn.

**A.     The Purchase and Collection of Consumer Debts by a Professional Services Corporation**

As an initial matter, the Court addresses Defendants' argument that Plaintiff fails to state claim under the Professional Services Corporation Act.  It is clear from the face of Plaintiff's Complaint; however, that she is not asserting a direct claim under that Act. Instead, she merely references the PSCA in connection with her substantive claims under

the FDCPA, NJCFA, and TCCWNA.  That said, in light of Plaintiff's reliance on the PSCA in connection with her substantive claims, the Court addresses whether Plaintiff's reliance is appropriate.

N.J.S.A. 14A:17-9 provides, in pertinent part:

> No professional corporation shall engage in any business other than the rendering of the professional services for which it was specifically incorporated; . . . provided, that nothing in this act or in any other provisions of existing law applicable to corporations shall be interpreted to prohibit such corporation from investing its funds in real estate, mortgages, stocks, bonds or any other type of investments ....

Id.  Plaintiff alleges that Hudson Law violates this statute "by engaging in a business outside of [the practice] it was organized to engage in or allowed by law to engage in." Compl., ¶ 48C. The statute, on its face, precludes a professional corporation from engaging in "any business other than the rendering of professional services," hence Plaintiff's allegation, which must be taken as true on a motion to dismiss, sufficiently alleges a violation of the statute.  Indeed, Defendants have not argued, in their papers, that Hudson Law did not engage in such a business.

This is not to say, however, that Hudson Law's mere purchase of Plaintiff's debt violates N.J.S.A. 14A:17-9.  To the contrary, the plain language of the Act provides "that nothing in this act or in any other provisions of existing law applicable to corporations shall be interpreted to prohibit such corporation from investing its funds in real estate,

mortgages, stocks, bonds or *any other type of investments*." <u>Id.</u> (emphasis added).  The statute's use of "any of other types of investments" is broad enough to include the purchase of debt obligations, such as Plaintiff's credit card debt, for investment purposes. It is only Plaintiff's allegation that Hudson Law engaged in the *business* of purchasing and collecting debts that alleges a violation of the PSCA.

Based on this alleged violation, Plaintiff contends that Hudson Law's purchase of, and attempt to collect, Plaintiff's debt are *ultra vires* or illegal acts that render Hudson Law's purchase of the debt void.  Further, as stated in Plaintiff's opposition brief, Plaintiff alleges that "[b]ecause [Hudson Law] is barred from acting as a debt buyer and cannot legally perform the activities of a debt buyer, it was a misrepresentation for HLO to claim that Plaintiff owed a debt to [Hudson law]." Pl. Opp. at 8.  And, Plaintiff further suggests, "[b]ecause HLO was barred by law from the purchase, the contract between Credit Solutions. [sic] Corp. and HLO is likely *void ab initio* for reasons of illegality." <u>Id.</u> at 8, n.1.

As noted, while Hudson Law's purchase of the debt does not facially violate the PSCA, its alleged operation of a separate debt collection business under the auspices of its professional practice does.  In this sense, Plaintiff is correct that a professional corporation's attempt to collect on a debt that is in violation of the statute would not likely be enforced by New Jersey courts.  Indeed, New Jersey courts will invalidate, as void against public policy,

> [a]n agreement [that] is . . . injurious to the interest of the
> public, contravenes some established interest of society, *violates*
> *some public statute*, is against good morals, tends to interfere
> with the public welfare or safety, or ... is at war with the
> interests of society and is in conflict with public morals.

Marcinczyk v. State of New Jersey Police Training, 203 N.J. 586, 594 (2010) (quoting Frank

Briscoe Co. v. Travelers Indem. Co., 65 F.Supp.2d 285, 312 (D.N.J. 1999)).  Simply put,

"contractual provisions that tend to injure the public in some way will not be enforced."

Id. (quoting Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 403-04 (1960)) (citation

omitted).  While not all violations of a statute are *ipso facto* void for public policy, see

Williston at § 12:4; Exit A Plus Realty v. Zuniga, 395 N.J.Super. 655, 664 (App. Div. 2007)

(refusing to invalidate a contract, reasoning "if the Legislature had wanted to invalidate

agreements entered in contravention of N.J.S.A. 45:15-17, it could have done so explicitly

...."), "[l]egislation intended to secure general objectives of public policy or morals cannot

be circumvented by private agreements."  General Motors Acceptance Corp. v. Cahill, 375

N.J.Super. 553, 566 (App. Div. 2005).  Thus, where the public policy violated by the contract

"is to secure general objects of policy or morals," as opposed to a statutory provision

designed for the benefit of individuals, courts are more likely to hold the offending contract

void.  Id.

    For example, in Sedaghat v. Jabbary, Docket No. L-7303-01, 2005 WL 3242263 (N.J.

App. Div. Dec. 2, 2005), the New Jersey Appellate Division held a professional corporation

contract void as against public policy.  In that case, the plaintiff, a Florida businessman,

filed suit against two New Jersey-licensed dentists that had borrowed money from him to

purchase their dental practice.  In connection with that loan, the defendant-dentists created

a trust designating the dental practice as the trustee holding the assets of the practice, and

listed themselves and the plaintiff as beneficiaries.  The trust, further, provided that after

five (5) years, or upon written demand of all beneficiaries, the assets and accrued income

of the trust estate was to be paid over to the beneficiaries.  The Appellate Division held that

the trust violated N.J.S.A. 14A:17-10(a), a provision of the PSCA that prohibits professional

corporations from issuing shares to non-licensed persons, as well as N.J.A.C. 13:30-8.13, a

regulation that prohibits dentists from sharing fees with non-dentists.  Id. at *4.  Citing the

maxim that "[a]n agreement or contract that is contrary to public policy is void and

unenforceable as a matter of law," the court ruled thereafter that "the trial court properly

granted summary judgment dismissing all of plaintiff's claims arising out of the declaration

of trust."  Id.

   I find Sedaghat persuasive in that it is consistent with New Jersey cases addressing

contracts that violate public policy discussed *supra*.[2]  Applying Sedaghat's reasoning here,

I further conclude that Plaintiff has sufficiently alleged that Hudson Law's operation of a

_____

   [2]      While this unpublished decision is non-binding, see R. 1:36-3, the Court may
rely upon its reasoning as persuasive authority.  Falcon v. American Cyanamid, 221 N.J.
Super. 252 (App. Div. 1987); James Const. Co., Inc. v. Director, Div. of Taxation, 18 N.J.Tax
224, 229 n.1 (1999).

debt collection business would render its collection of Plaintiff's debt unenforceable under New Jersey law.  Accord Dalton, 412 F.Supp. at 1007 (holding that, where contract was unenforceable, all claims arising out of or "directly connected with the illegal contract . . . are equally tainted").

That New Jersey public policy would be affronted by Hudson Law's alleged operation of a debt collection business under the auspices of its professional offices is supported by the New Jersey Supreme Court's ruling that "[c]ontracts that violate the [New Jersey's Rules of Professional Conduct ("RPCs")] violate public policy, and courts must deem them unenforceable."  Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 17 (1992).  And, though the Plaintiff does not allege violation of a specific RPC, Advisory Committee on Professional Ethics Opinions express New Jersey's public policy that "lawyers must keep their practices entirely separate from their business enterprises ...."  Advisory Comm. on Prof. Ethics, Op. No. 688, 159 N.J.L.J. 1050 (Mar. 13, 2000).

In short,  the Court must accept as true, on this motion to dismiss, Plaintiff's allegation that Defendants operated a debt collection business under the auspices of Hudson Law, and in such a manner as to violate the PSCA.[3]  Having concluded that New Jersey courts would not enforce an attempt to collect on a contract violative of the PSCA, the Court will now turn to Plaintiff's substantive claims and Defendants challenges thereto.

_____

[3]     Only discovery will reveal whether Hudson Law actually operated a debt collection business in such a fashion as to be barred by the PSCA.

10

### B.      FDCPA

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.SC. § 1692(e). Specifically, the FDCPA prohibits the use of any conduct the natural consequences of which is to harass, oppress, or abuse any person, 15 U.S.C. § 1692d, any false, deceptive, or misleading representations or means, 15 U.S .C. § 1692e, and any unfair or unconscionable means, 15 U.S.C. § 1692f, to collect or attempt to collect any debt.  The FDCPA creates a private cause of action against debt collectors who violate its provisions. Brown v. Card Service Center, 464 F.3d 450, 453 (3d Cir. 2006) (15 U.S.C. § 1692k).[4]

---

[4]      Defendants do not challenge Plaintiff's allegation that Hudson Law is a debt collector within the meaning of the FDCPA.  Indeed, the Bill of Sale attached to the Hudson Complaint seems to indicate that Hudson Law purchased the debt after Plaintiff defaulted on the debt, which would make Hudson Law a debt collector under the FDCPA.  See Pollice v. National Tax Funding, L.P., 225 F.3d 379, 404 (3d Cir. 2000) ("[O]ne who acquires the debt after it is in default is deemed a debt collector, and is subject to the provisions of the Act.") (quoting Duff McKee, Liability of Debt Collector to Debtor under the Federal Fair Debt Collection Practices Act, 41 Am.Jur. Proof of Facts 3d 159, at § 3 (1997)); see also 15 U.S.C. § 1692a(4), § 1692a(6) (defining "creditor" and "debt collector," respectively).  Moreover, "[a]ttorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirements of the FDCPA." F.T.C. v. Check Investors, Inc., 502 F.3d 159, 172 (3d Cir. 2007).

11

In determining whether a communication from a debt collector violates the FDCPA, a court must analyze the debt collector's statements from the perspective of the "least sophisticated debtor," id. at 454; Campuzano-Burgos v. Midland Credit Mgmt., 550 F.3d 294, 301 (3d Cir. 2008), in order to protect "all consumers, the gullible as well as the shrewd." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Brown, 464 F.3d at 454).  Although the "least sophisticated consumer" standard is a low standard, it nonetheless "'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.' " Rosenau, 539 F.3d at 221 (quoting Wilson v. Quadramed Corp., 225 F.3d 350, 355 (3d Cir. 2000)).

As an initial matter, I address Defendants' argument that the 15 U.S.C. § 1692e(11) exemption for formal pleadings bars Plaintiff's FDCPA claim.  That provision reads, in pertinent part:

> [T]he following conduct is a violation of [§ 1692e] . . . [t]he failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose . . . *except that this paragraph shall not apply to a formal pleading made in connection with a legal action*.

15 U.S.C. § 1692e(11).  By its own terms, the exemption for legal pleadings is limited to the disclosure requirement that a debt collector state it is "attempting to collect a debt and that any information obtained will be used for that purpose."  See Sayyed v. Wolpoff &

12

Abramson, 485 F.3d 226, 231 (4th Cir. 2007); id. ("This provision expressly exempts formal pleadings from a sole, particularized requirement of the FDCPA: the requirement that all communications state that they come from a debt collector."); Sebrow v. Fein, Such, Kahn, & Shephard, P.C., Civ. Action No. 10-215, 2010 WL 4553559, *2 n.3 (D.N.J. Nov. 1, 2010) ("[I]t is unlikely that a complaint alleging violations of Section 1692e(11) based solely on a formal pleading in another action could survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).").   Since Plaintiff has not alleged a violation of the § 1692e(11) disclosure requirement, the exemption for formal pleadings is inapplicable here.

Moreover, Congress has enacted a similarly circumscribed provision in 2006, exempting pleadings specifically from the FDCPA's initial communication notice requirement.  Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, –- U.S. –-, 130 S.Ct. 1605, 1612 (2010) (citing 15 U.S.C. § 1692g).[5]  That Congress enacted this separate provision of the same nature as the § 1692e(11) exemption buttresses my conclusion that the latter does not apply generally to all FDCPA claims, but is limited to the particular paragraph in which the exemption is found.  Accordingly, I reject Defendants' argument that the §

---

[5]      "The FDCPA has been amended some eight times since its enactment in 1977; the most recent amendment addressed a concern not unrelated to the question we consider today, specifying that a pleading in a civil action is not an 'initial communication' triggering obligations under § 1692g requiring a written notice to the consumer. Financial Services Regulatory Relief Act of 2006, § 802(a), 120 Stat. 2006 (codified at 15 U.S.C. § 1692g(d))."  Id. at 1610, n.22.

1692e(11) exemptions bars Plaintiff's FDCPA claim.[6]

Turning to Plaintiff's substantive allegations, each of the alleged FDCPA violations is predicated upon the notion that Hudson Law's purchase of Plaintiff's debt was invalid, that Hudson Law cannot act as a debt collector, and, thus, Hudson Law is not the true owner of the debt under New Jersey law.  Plaintiff, generally, alleges a violation of § 1692e, which prohibits the use of "any false, deceptive, or misleading representations or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  In addition, Plaintiff alleges that Defendants' actions violate two specific subsections of § 1692, namely, subsections § 1692e(2)(A) and § 1692e(10).  The former bars debt collectors from misrepresenting the "legal status of any debt."  The latter bars the "use of any false representation or deceptive means to collect or attempt to collect a debt ...."  "Courts have long held that after finding a valid claim under a more specific subsection of § 1692e . . . further analysis under § 1692e(10) is 'somewhat duplicative." Gervais, 479 F.Supp.2d at 276 -77 .  Hence, this Court's § 1692e analysis will focus primarily on § 1692e(2)(A).  Finally, Plaintiff alleges that Defendants' actions violate § 1692f(1), in that Hudson Law attempted to collect a debt that "was not expressly authorized by the agreement creating the debt or

---

[6]     Moreover, as the Third Circuit has recently made clear, New Jersey's common law litigation privilege for communications made in judicial proceedings does not apply to FDCPA claims.  Allen ex rel. Martin v. LaSalle Bank, N.A., — F.3d —, 2011 WL 94420, * 4 (3d Cir. 2011).

permitted by law."  Compl., ¶ 68.

Plaintiff's claim premised on § 1692f(1) is not viable.  The plain language of §
1692f(1) bars collection of "any *amount* . . . unless such *amount* is expressly authorized by
the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1) (emphasis
added).  In other words, "[i]f the agreement does not expressly authorize or state law does
not permit the amounts sought, [Plaintiff] has stated a viable claim under § 1692f(1)."  Allen
ex rel. Martin v. LaSalle Bank, N.A., — F.3d —, 2011 WL 94420, *4 (3d Cir. 2011).  Here,
Plaintiff's allegations do not challenge the amount sought in the Hudson Complaint; rather,
her allegations focus on Hudson Law's inability to legally purchase the debt under the
PSCA.  Because her allegations do not speak to the amount sought, they do not state a
claim under § 1692f(1).  Compare Barows v. Chase Manhattan Mortg. Corp., 465 F.Supp.2d
347, 358 (D.N.J. 2006) ("construing the allegations in Plaintiff's Complaint as true, Plaintiff
has stated a claim that the Hubschman Defendants attempted to collect *attorneys' fees and
costs* not permitted by law in violation of the FDCPA.") (emphasis mine).

A fair reading of Plaintiff's Complaint reveals that her allegations under § 1692e, §
1692e(2)(A), and § 1692e(10) are that: (1)  Hudson Law's representation of itself as legal
owner of the debt is deceptive; and (2) Hudson Law misrepresented the legal status of her
debt by attempting to a collect on a debt that is unenforceable under New Jersey law.  As
an initial matter, the Court rejects Plaintiff's argument that Hudson Law's representation

of itself as legal owner of the debt is deceptive.  As noted *supra*, the PSCA does not preclude professional corporations from investing in consumer debts; it only precludes the joint operation of a debt collection business.  Thus, the ensuing analysis focuses solely on Hudson Law's alleged misrepresentation of the legal status of Plaintiff's debt by allegedly attempting to a collect on a debt that violates and is unenforceable under New Jersey law.

Several courts have considered whether a violation of state law may form the basis of a §1692e claim.  The most factually analogous case in this circuit is <u>Crossley v. Lieberman</u>, a 1989 Third Circuit decision holding that an attorney's inclusion, in a letter, of a statement contravening Pennsylvania state law violated § 1697 e(10).  868 F.2d 566, 571 (3d Cir. 1989).  The attorney in that case mailed a letter to a mortgagor in default on her mortgage, which letter threatened that the mortgagee would file a foreclosure action against her "within one week," despite a Pennsylvania foreclosure law that prohibited the filing of a foreclosure action until thirty (30) days after providing a written notice of intent to foreclose.  The Third Circuit held that the attorney's letter was misleading because it misrepresented the lender's ability to proceed against the mortgagor under state law within one week when, under Pennsylvania law, a proceeding could not be instituted for thirty (30) days.[7]  Suggesting that <u>Crossley</u> is still good law, the Third Circuit recently cited it for

---

[7]      Pennsylvania law also required foreclosing lenders to inform the debtor of her right to cure.  <u>Id.</u> at 571.  The court found the attorney's failure to inclusion such notice in his letter to constitute another misrepresentation.  <u>Id.</u>

the proposition that "attorney debt collectors warrant closer scrutiny because their abusive collection practices 'are more egregious than those of lay collectors." <u>Campuzano-Burgos</u>, 550 F.3d at 301. <u>Crossley</u> differs from the allegations here only in that the communication involved in that case was a letter whereas the communication here was included in a pleading document.

Other, more recent, district court cases have assessed whether a state law violation may form the basis of a claim under § 1692e based on statements made in a state court pleading.  In <u>Scioli v. Goldman & Warshaw P.C.</u>, 651 F.Supp.2d 273 (D.N.J. 2009), for example, the court addressed whether the inclusion in a state court complaint of a certain amount of attorneys' fees violated §1692e(2)(B).  After concluding that the attorney's fees sought were actually permitted by the state statute, the Court rejected the Plaintiff's claim. <u>Id.</u> at 281.  Similarly, in <u>Miller v. Javitch, Block & Rathbone</u>, 534 F.Supp.2d 772 (S.D.Ohio 2008), a district court rejected a § 1692e claim based on the alleged misrepresentation of the defendants' legal status as a holder in due course where it concluded the "Defendants have presented ample evidence that it did, in fact, purchase all right, title and interest to [the plaintiff's] debt.".  <u>Id.</u> at 776.

At least one circuit court, however, has questioned whether the FDCPA governs the content of state court complaints, as opposed to other non-pleading documents.  In <u>Beler v. Blatt, Hasenmiller, Leibsker & Moore,LLC</u>, 480 F.3d 470 (7th Cir. 2007), the Seventh

Circuit challenged the idea that the FDCPA "regulates the contents of complaints, affidavits, and other papers filed in state court." Id. at 472. In that court's view, "state's rules of procedure, not federal law, determine which facts, and how much detail, must be included in documents filed with a clerk of court for presentation to a judge." Id. at 473. But that case is distinguishable from the facts here because the plaintiff in that case did not allege that the contents of the pleading were deceptive; that plaintiff alleged only that the complaint was not written in plain english. Id. (noting that plaintiff argued that description in affidavit of contracts creating debt was "not clear enough to enable an unsophisticated consumer"). See also Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 594-96 (6th Cir. 2009) (holding that language in state court complaint that claim was "for money loaned," and use of "charge card" language, was not misleading even though language may have been difficult to interpret for the least sophistical consumer).

Here, unlike the plaintiff in Beler, Plaintiff has asserted that Hudson Law's filing of the Hudson Complaint misrepresented its ability to collect Plaintiff's debt under New Jersey law. As indicated supra, I agree that Plaintiff has sufficiently alleged that Hudson Law's operation of the debt collection business would render its attempt to collect the debt unenforceable. Further, that the debt was owned and prosecuted by a law firm could have created in a least sophisticated consumer's mind an impression of legal validity not typically imputed to a creditor's actions. Cf. Campuzano-Burgos, 550 F.3d at 301 ("Debtors

18

react more quickly to an attorney's communication because they believe 'that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which [such a] letter was sent.") (quoting <u>Avila v. Rubin</u>, 84 F.3d 222, 229 (7th Cir. 1996)). Thus, based on the Third Circuit's holding in <u>Crossley</u> and the more recent district court cases that have acknowledged a §1692e violation may be based on a misrepresentation of the ability to collect a debt under state law, I conclude that Plaintiff has sufficiently plead an § 1692e claim.

### C.   NJCFA

To state a claim under the New Jersey Consumer Fraud Act ("NJCFA"), a private "plaintiff must allege each of [the] three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." <u>New Jersey Citizen Action v. Schering-Plough Corp.</u>, 367 N.J.Super. 8, 12-13, 842 A.2d 174 (App.Div.), certif. denied, 178 N.J. 249, 837 A.2d 1092 (2003) (citing <u>Cox v. Sears Roebuck & Co.</u>, 138 N.J. 2, 24, 647 A.2d 454 (1994)).

The NJCFA defines unlawful conduct as follows:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, *in connection with the sale or*

19

> *advertisement of any merchandise or real estate ...* whether or not
> any person has in fact been misled, deceived or damaged
> hereby ....

N.J.S.A. 56:8-2 (emphasis added). The NJCFA further defines "merchandise" to include

"any objects, wares, goods, commodities, services or anything offered, directly or indirectly

to the public for sale." N.J.S.A. 56:8-1(c); <u>Fiderne Mgmt. Co., Inc. v. Barrett</u>, 402 N.J.Super.

546, 566 (App. Div. 2008).

Hudson Law argues, *inter alia*, that Plaintiff's NJCFA claims fails because the NJCFA

does not apply to debt collection activities.[8]  Indeed, courts have concluded that the NJCFA

"does not provide a right of action to debtors contesting the actions of the creditor."

<u>Nicholls v. Portfolio Recovery Associates, LLC</u>, Civ. Action No. 09-5714, 2010 WL 1257738,

* 5 (D.N.J. Mar. 29, 2010); <u>id.</u> (collecting cases).  The <u>Nicholls</u> court reasons that a debtor,

such as Plaintiff, is not a "consumer," a debt transaction is not a "sale," and a debt is not

"merchandise."  I find this reasoning persuasive and consistent with the plain language of

the NJCFA.  <u>See</u> <u>Castro v. NYT Television</u>, 370 N.J.Super. 282, 287-88 (App. Div. 2004)

(holding that NJCFA claims must allege "deception, fraud or misrepresentation 'in

connection with' the sale of merchandise or services"); <u>cf.</u> <u>Joe Hand Promotions, Inc. v.</u>

<u>Mills</u>, 567 F.Supp.2d 719, 724 (D.N.J. 2008) (holding that letter from attorney fraudulently

---

[8]     Alternatively, Hudson Law argues that the NJCFA does not apply to
attorneys.  I need not reach this issue because I rule on alternate grounds.  In addition, via
a letter dated August 6, 2010, Defendants abandoned their argument that Plaintiff failed
to allege ascertainable loss.

threatening plaintiff of violating defendant's exclusive licensing rights was not actionable under the NJCFA because letter did not involve a sale of merchandise).   Accordingly, Plaintiff's NJCFA claim is untenable and must be dismissed.

### D.   TCCWNA

The Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-15 ("TCCWNA"), prohibits consumer contracts, warranties, notices, or signs with provisions that "violate[ ] any clearly established legal right of a consumer" or "[a] clearly established legal . . . responsibility of a . . . creditor ...."  Under this act, one who violates the TCCWNA is liable for either a $100 civil penalty or actual damages.  N.J.S.A. 56:12-17.

As a threshold matter, Defendants apparently concede for the sake of this motion that Plaintiff's debt was the result of a consumer contract.  Def. Reply at 6.  The more pertinent question, though, is whether the complaint itself is a consumer contract or "notice" under the TCCWNA, which term is not defined by the statute.  Courts have held that a payoff statement, for example, constitutes a notice under the Act.  See Rickenbach v. Wells Fargo Bank, N.A., 635 F.Supp.2d 389, 400 (D.N.J. 2009) (concluding that payoff statement sent by mortgagee's attorney in prosecution of foreclosure action was a "notice" under the TCCWNA).

I need not decide here whether the Hudson Complaint is a "notice" because, even assuming as much, courts focus upon the underlying debt instrument—not the legal

complaint seeking to collect the debt— in assessing the viability of claims brought under the TCCWNA by a successor-in-interest.  See e.g., Rivera v. Washington Mut. Bank, 637 F.Supp.2d 256, 268 n.22 (D.N.J. 2009) (focusing on underlying mortgage and note in foreclosure action brought by successor-in-interest to mortgage and note); Skypala v. Mortgage Electronic Registration Systems, Inc., 655 F.Supp.2d 451, 459 n.20 (D.N.J. 2009) (same).  Hence Defendants correctly argue that Plaintiff's claim must fail because she does not allege that a provision in the underlying credit agreement with First Bank of Delaware contained a provision that violates her clearly established rights or the creditor's clearly established responsibilities.  Rather, she challenges the content of the complaint filed to collect on the debt.  For this reason, Plaintiff's TCCWNA claim must be dismissed.

E.    **Individual Liability**

Defendant Hudson moves to dismiss the NJCFA claim asserted against her individually because the allegations against her speak to actions completed in her professional capacity as attorney for Hudson Law, the owner of Plaintiff's debt.  Because the NJCFA and TCCWNA claims are dismissed for the reasons set forth above, I need not resolve the question of whether these statutes reach her individual conduct. With respect to the FDCPA claim, it is clear that attorneys may be held liable for misleading statements made on behalf of their clients.  See Jerman, 130 S.Ct. at 1618; Check Investors, 502 F.3d at

22

172.[9] Thus, the FDCPA claim against Hudson remains.

IV.    **CONCLUSION**

For the foregoing reasons, the Court denies Defendants' motion with respect to the

FDCPA claim, but grants Defendants' motion with respect to the NJCFA and TCCWNA

claims.  Defendants' request to dismiss Defendant Lauri A. Hudson is also denied.


Dated: February 10, 2011                            /s/ Freda Wolfson
                                                    Honorable Freda L. Wolfson
                                                    United States District Judge

---

[9]        In making this statement, the Court does not rule that Hudson acted in her
professional capacity as an attorney in representing her own firm in connection with the
state court action to collect Plaintiff's debt.

23